UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                     Case No. 21-CR-223

RICHARD MOSQUEDA,

Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Christopher Ladwig, Assistant United States Attorney, and the defendant, Richard Mosqueda, individually and by attorney Patrick Cafferty, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in six counts of a 25-count indictment, which alleges violations of Title 18, United States Code, Sections 371, 554, 922(a)(1)(A), 924(a)(1)(D), 2(a), and 2(b); and Title 22, United States Code, Sections 2778(b)(2) and 2778(c).

3.      The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

**COUNT FOUR**
*Smuggling Goods from the United States*

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Between on or about February 20, 2018, and on or about March 11, 2018, in the State and Eastern District of Wisconsin and elsewhere,

**JESUS CISNEROS-HERNANDEZ,**
**JUAN ARTURO CHARLES, and**
**RICHARD MOSQUEDA**

did knowingly export and send from the United States and attempt to export and send from the United States an object, and did receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such object, knowing the same to be intended for exportation, contrary to a law and regulation of the United States, namely, the Gun Control Act of 1968, specifically, Title 18, United States Code, Sections 922(a)(1)(A), 924(n), and 922(k), the Arms Export Control Act (AECA), specifically, Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and the International Traffic in Arms Regulations (ITAR), specifically, Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.3.

2.     The object is more particularly described as a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006768.

All in violation of Title 18, United States Code, Sections 554, 2(a), and 2(b), and *Pinkerton v. United States*, 328 U.S. 640 (1946).

**COUNT FIVE**
*Violation of the Arms Export Control Act*

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 11, 2018, in the State and Eastern District of Wisconsin and elsewhere,

**JESUS CISNEROS-HERNANDEZ,**
**JUAN ARTURO CHARLES, and**
**RICHARD MOSQUEDA**

did willfully export, attempt to export, and cause to be exported a defense article, namely, a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006768, which was designated under Category I of the United States Munitions List, from the United States to Mexico, without a license for such export issued by the Department of State.

In violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.3, Title 18, United States Code, Sections 2(a) and 2(b), and *Pinkerton v. United States*, 328 U.S. 640 (1946).

2

## COUNT EIGHT
### *Smuggling Goods from the United States*

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Between on or about April 9, 2018, and on or about May 6, 2018, in the State and Eastern District of Wisconsin and elsewhere,

### JESUS CISNEROS-HERNANDEZ,
### JUAN ARTURO CHARLES, and
### RICHARD MOSQUEDA

did knowingly export and send from the United States and attempt to export and send from the United States objects, and did receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such objects, knowing the same to be intended for exportation, contrary to a law and regulation of the United States, namely, the Gun Control Act of 1968, specifically, Title 18, United States Code, Sections 922(a)(1)(A), 924(n), and 922(k), the Arms Export Control Act (AECA), specifically, Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and the International Traffic in Arms Regulations (ITAR), specifically, Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.3.

2.      The objects are more particularly described as a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number 1535 and a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006824.

All in violation of Title 18, United States Code, Sections 554, 2(a), and 2(b), and *Pinkerton v. United States*, 328 U.S. 640 (1946).

5.      The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6.      The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines: Counts

3

Four and 8: 10 years' imprisonment and $250,000 fine; Count Five: 20 years' imprisonment and $1,000,000 fine. Each count also carries a mandatory special assessment of $100 and up to 3 years of supervised release.

7.     The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

### DISMISSAL OF REMAINING COUNTS

8.     The government agrees to move to dismiss, against this defendant only, Counts One, Four, and Nine of the indictment, at the time of sentencing.

### ELEMENTS

9.     The parties understand and agree that in order to sustain the charge of ***Smuggling*** as set forth in Counts Four and Eight, the government must prove each of the following propositions beyond a reasonable doubt:

**First**, the defendant knowingly exported, sent, attempted to export, or attempted to send merchandise;

**Second**, the defendant's sending was contrary to a federal law or regulation; and

**Third**, the defendant knew the exportation or sending of the merchandise was contrary to law or regulation.

The parties understand and agree that in order to sustain a charge of ***Violation of the Arms Export Control Act*** as set forth in Count Five, the government must prove each of the following propositions beyond a reasonable doubt:

**First**, the defendant exported, attempted to export, or caused to be exported from the United States an article listed on the Munitions List;

**Second**, the defendant did not obtain a license or written approval for the export from the State Department; and

**Third**, the defendant did such acts willfully.

4

## SENTENCING PROVISIONS

10.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided

5

false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

## Base Offense Level

16.     The parties agree to recommend to the sentencing court that the applicable base offense level for the offenses charged in Counts Four, Five, and Eight is 26 under Sentencing Guidelines Manual § 2M5.2(a)(1).

## Role in the Offense

17.     Pursuant to Sentencing Guidelines Manual §§ 3B1.1/3B1.2, the parties agree to recommend no adjustment be given for an aggravating or mitigating role in the offense, as the defendant was neither an organizer, leader, manager, or supervisor or a minimal or minor participant.

## Acceptance of Responsibility

18.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is

6

entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

19.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20.     Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

21.     The parties understand and acknowledge that the government will recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

22.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court

7

will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

26.     The parties agree to recommend no fine.

27.     The defendant agrees to pay the special assessment in the amount of $300 prior to or at the time of sentencing.

## Forfeiture

28.     The defendant agrees that all properties listed in the indictment constitute the proceeds of the offenses to which he is pleading guilty or were used to facilitate such offenses. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

29.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a.   If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b.   If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c.   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

9

d.     At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.     At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30.     The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31.     The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32.     The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

10

33.     Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

34.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

11

## GENERAL MATTERS

35.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed

12

against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

40.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: _3/22/23_       _____
                                 RICHARD MOSQUEDA
                                 Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: _3/22/23_       _____
                                 PATRICK CAFFERTY
                                 Attorney for Defendant

For the United States of America:

Date: _3/23/23_       _____
                                 GREGORY J. HAANSTAD
                                 United States Attorney

Date: _3/23/23_       _____
                                 CHRISTOPHER LADWIG
                                 Assistant United States Attorney

14

## ATTACHMENT A

The primary purpose of the conspiracy was to purchase firearms in the United States, smuggle the firearms to Mexico, and supply the firearms to the Cartel de Jalisco Nueva Generación (CJNG), a transnational criminal organization.

On May 21, 2018, members of CJNG, a Mexican transnational drug trafficking organization, attempted to assassinate Luis Carlos Najera Gutierrez de Velasco, the Minister of Labor of Mexico and the former Attorney General for the State of Jalisco, in Guadalajara, Mexico.

On June 9, 2018, Mexican law enforcement officers searched the Guadalajara residence of a suspected CJNG cartel member in response to this assassination attempt. During the search, agents recovered 33 firearms, 3 grenade launchers, thousands of rounds of ammunition, 243 bags of marijuana, one bag of synthetic white material, scales, and communication radios.

One of the firearms recovered was a Barrett Model 82A1 .50 caliber rifle (Serial: AA006824). A gun trace revealed that the firearm was purchased by a resident of Racine, Wisconsin, at The Shooters' Sports Center in Racine in April 2018. This purchase occurred 24 days before the assassination attempt and 43 days before recovery.

In or about December 2017, JESUS CISNEROS-HERNANDEZ spoke with Co-Conspirator 1 and Co-Conspirator 2 in Jalisco, Mexico, about purchasing firearms in the United States in exchange for money.

On or about February 20, 2018, Co-Conspirator 1 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006768.

On or about March 11, 2018, Co-Conspirator 1 and Co-Conspirator 2 transported a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006768 from the Eastern District of Wisconsin to California for export from the United States to Mexico.

On or about April 1, 2018, Co-Conspirator 2 transported money received in exchange for a firearm from Mexico to the United States.

On or about April 9, 2018, Co-Conspirator 2 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006824.

On or about April 11, 2018, Co-Conspirator 1 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number 1535.

On or about April 25, 2018, Co-Conspirator 1 took possession of a Barrett Model 82Al .50 BMG caliber rifle bearing serial number 1535 from The Shooters' Sports Center in Racine, Wisconsin.

On or about June 13, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 caliber rifle bearing serial number AA002853.

On or about June 15, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Browning M2HB .50 BMG caliber rifle bearing serial number 000043.

On or about July 10, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model M82A1 .50 caliber rifle bearing serial number AA002148.

On or about September 13, 2018, Co-Conspirator 1 and CRISTINA COLE communicated about an attempt to purchase a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number AA007538 from Fletcher Arms, a licensed dealer in Waukesha, Wisconsin.

On or about September 18, 2018, Co-Conspirator 2 made a false statement intended and likely to deceive Fletcher Arms, a licensed dealer in Waukesha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number AA007538.

On or about September 12, 2018, RAFAEL PRECIADO attempted to purchase a Barrett Model M82A1 .50 BMG caliber rifle bearing serial number AA007013 from The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin.

On or about September 12, 2018, RAFAEL PRECIADO made a false statement intended and likely to deceive The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model M82A1 .50 BMG caliber rifle bearing serial number AA007013.

On or about September 20, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive Gander Outdoors, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model M82A1 .50 BMG caliber rifle bearing serial number AA007013.

Between on or about October 25, 2018, and on or about October 31, 2018, Co-Conspirator 1 disposed of multiple rifle cases and pistol cases, firearms manuals, and an inspection tag for a Barrett .50 caliber rifle bearing serial number AA007013 in a dumpster in Oak Creek, Wisconsin.

On or about February 27, 2019, Co-Conspirator 1 made a false statement intended and likely to deceive Gander Outdoors, a licensed dealer in Kenosha, Wisconsin, with respect to a fact

material to the lawfulness of the sale and disposition of a FN America SCAR 17S 7.62 caliber rifle bearing serial number H0C10924.

On or about February 27, 2019, Co-Conspirator 1 made a false statement intended and likely to deceive Gander Outdoors, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a FN America SCAR 17S 7.62 FDE caliber rifle bearing serial number HC40015.

In March 2018, Co-Conspirator 1 contacted CISNEROS-HERNANDEZ'S courier, Richard Mosqueda. Co-Conspirator 1 took the Barrett (Serial: AA006768) and transferred this into Mosqueda's pickup truck outside of his cousin's house in California. Mosqueda's Facebook records corroborates his involvement in the conspiracy with references to firearms, smuggling, and the same co-conspirators by nickname. In particular, Mosqueda referred to Cisneros-Hernandez (by a known nickname) as the "el mero patro," and references reporting to "Gera," a nickname for Gerardo Delgado-Cobian. Mosqueda would then smuggle those firearms into Tijuana, Mexico. Mosqueda did receive, conceal, and facilitate the transportation, concealment, and sale of the Barrett (Serial: AA006768), knowing the firearm was intended for exportation into Mexico. A Barrett Model 82Al .50 caliber rifle bearing serial number AA006768 was designated under Category I of the United States Munitions List, and Mosqueda did not have the proper license issued by the Department of State to export this firearm from the United States into Mexico.

In April 2018, Co-Conspirator 1 took custody of a Barrett Model M82Al .50 caliber rifle (Serial: 1535). This gun was purchased on Gunbroker.com, an online gun auction site, but transferred at The Shooters' Sports Center in Racine, Wisconsin. Also in April 2018, Co-Conspirator 2 took custody of a Barrett Model 82A1 .50 caliber rifle (Serial: AA006824)—the same firearm recovered from the CJNG member's house in Guadalajara—from The Shooters' Sports Center in Racine, Wisconsin. In May 2018, Co-Conspirator 2 and VICTOR COBIAN traveled from Wisconsin to California and transferred the Barrett Model M82Al .50 caliber rifle (Serial: 1535) and the Barrett Model 82A1 .50 caliber rifle (Serial: AA006824) to Mosqueda. Mosqueda transferred those firearms from the United States into Mexico. Mosqueda did receive, conceal, and facilitate the transportation, concealment, and sale of the Barrett Model M82Al .50 caliber rifle (Serial: 1535) and the Barrett Model 82A1 .50 caliber rifle (Serial: AA006824), knowing the firearms were intended for exportation into Mexico. A Barrett Model M82Al .50 caliber rifle (Serial: 1535) and a Barrett Model 82A1 .50 caliber rifle (Serial: AA006824) were designated under Category I of the United States Munitions List, and Mosqueda did not have the proper license issued by the Department of State to export these firearms from the United States into Mexico.