# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                 Case No. 21-CR-223

VICTOR COBIAN,

        Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Christopher Ladwig and Philip T. Kovoor, Assistant United States Attorneys, and the defendant, Victor Cobian, individually and by attorney Michael Steinle, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2.     The defendant has been charged in 18 counts of a 25-count indictment, which alleges violations of Title 18, United States Code, Sections 2(a), 2(b), 371, 554, 922(a)(1)(A), 922(a)(6), 924(a)(1)(D), 924(a)(2), 924(b), 1512(b)(2)(B), 1512(c)(1), 1512(c)(2), and Title 22, United States Code, Sections 2778(b)(2) and 2778(c).

3.     The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to plead guilty to the following counts set forth in Attachment A.

5.      The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in Attachment A. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment B beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6.      The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carries the following maximum terms of imprisonment and fines: Count One, up to 5 years and $250,000; Counts Fourteen, up to 10 years and $250,000; and Count Fifteen, up to 20 years and $250,000. Each count also carries a mandatory special assessment of $100, and up to 3 years supervised release.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8.      The government agrees to move to dismiss, against this defendant only, Counts 2, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25, at the time of sentencing.

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charge of **conspiracy** as set forth in **Count One**, the government must prove the following propositions beyond a reasonable doubt:

2

**First**, the conspiracy as charged in Count One existed;

**Second**, the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy; and

**Third**, one of the conspirators committed an overt act in an effort to advance a goal of the conspiracy on or before March 1, 2019.

The parties understand and agree that in order to sustain the charge of **smuggling** as set forth in **Count Fourteen**, the government must prove each of the following propositions beyond a reasonable doubt:

**First**, the defendant knowingly exported, sent, attempted to export, or attempted to send merchandise;

**Second**, the defendant's sending was contrary to a federal law or regulation; and

**Third**, the defendant knew the exportation or sending of the merchandise was contrary to law or regulation.

The parties understand and agree that in order to sustain the charge of **exportation of a defense article without a license** as set forth in **Count Fifteen**, the government must prove each of the following propositions beyond a reasonable doubt:

**First**, the defendant exported, attempted to export, or caused to be exported from the United States an article listed on the Munitions List;

**Second**, the defendant did not obtain a license or written approval for the export from the State Department; and

**Third**, the defendant did such acts willfully.

## SENTENCING PROVISIONS

10.     The parties agree to waive the time limits in Federal Rule of Criminal Procedure 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses refernced in paragraph 4 and set forth in Attachment A. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the

sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

## Base Offense Level

16.     The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offenses charged in Count One is 12 under Sentencing Guidelines Manual §§ 2X1.1(a) and 2K2.1(a)(7), that the applicable base offense levels for Counts Fourteen and Fifteen is 26 under Sentencing Guidelines Manual § 2M5.2(a)(1).

## Specific Offense Characteristics

17.     The parties agree to recommend to the sentencing court that a 4-level increase for the number of firearms under Sentencing Guidelines Manual § 2K2.1(b)(1)(B), a 5-level increase for engaging in the trafficking of firearms under Sentencing Guidelines Manual § 2K2.1(b)(5)(C)(iii), and a 4-level increase for possessing or transferring a firearm with knowledge, intent, or reason to believe that it would be transported out of the United States, using or possessing a firearm in connection with another felony offense, and possessing or transferring a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense under Sentencing Guidelines Manual § 2K2.1(b)(6)(A) and (B) are applicable to the offense level for the offense charged in Count One.

## Role in the Offense

18.     The government agrees to make no recommendation regarding the defendant's role in the offense; however, the government will advise the sentencing court with regard to any facts or law relevant to this adjustment.

## Acceptance of Responsibility

19.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing.

## Sentencing Recommendations

20.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21.     Both parties reserve the right to make any recommendation regarding any and all matters not specifically addressed by this agreement.

## Sentencing Agreement

22.     Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and based on the relevant factors in 18 U.S.C. § 3553(a), the parties agree that the appropriate disposition of the case is a sentence of 42 months of imprisonment followed by a term of 3 years of supervised release. The Court may accept the plea agreement, reject it, or defer a decision until the Court has reviewed the presentence report. If the Court accepts the plea agreement, this sentencing provision is binding on the Court.

23.     Pursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects this plea agreement, the defendant will be allowed to withdraw his guilty plea. If the defendant declines to withdraw his guilty plea, the disposition of the case may be less favorable than that contemplated

by the plea agreement, and the Court may impose a reasonable sentence above or below the calculated guideline range and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above.

24.     The defendant agrees and understands that other than the opportunity to withdraw his guilty plea as outlined in paragraph 23, the defendant will not be allowed to withdraw his guilty plea because of the Court's determinations at sentencing, including the calculation of the sentencing guidelines, other findings or rulings, or the sentence imposed.

## Court's Determinations at Sentencing

25.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement, other than as described in paragraph 22. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above, except that if the Court accepts this plea, the Court will be bound by the sentencing provision in paragraph 22. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

26.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

27.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction.   The defendant further understands that any payment schedule imposed by the

sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

28.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

29.     The parties agree to recommend no fine be imposed against the defendant.

### Special Assessment

30.     The defendant agrees to pay the special assessment in the amount of $300 prior to or at the time of sentencing.

### Forfeiture

31.     The defendant agrees that all properties listed in the indictment constitute the proceeds of the offenses to which he is pleading guilty or were used to facilitate such offenses. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed

8

properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

32.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying on to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33.     The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has

explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34.    The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35.    The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

36.    Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction

motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

37.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

38.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40.     The parties acknowledge, understand, and agree that the United States Attorney's Office is free to notify any local, state, or federal agency of the defendant's conviction.

41.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The

11

defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## Further Action by Internal Revenue Service

42.     Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

43.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

44.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ATTACHMENT A

## COUNT ONE
*Conspiracy*

**THE GRAND JURY CHARGES THAT:**

1.  Beginning by at least December 2017 and continuing until on or about March 1,

2019, in the State and Eastern District of Wisconsin and elsewhere,

**JESUS CISNEROS-HERNANDEZ,**
**JUAN ARTURO CHARLES,**
**VICTOR COBIAN,**
**RICHARD MOSQUEDA,**
**CRISTINA COLE,**
**DEJAN ZORIC, and**
**RAFAEL PRECIADO**

did knowingly and intentionally conspire with each other and others known and unknown to the

Grand Jury to commit offenses against the United States, namely:

      (a)      to knowingly make a false statement in connection with the acquisition and attempted acquisition of any firearm and ammunition from a licensed dealer intended and likely to deceive such dealer of a fact material to the lawfulness of the sale and other disposition of such firearm and ammunition, in violation of Title 18, United States Code, Section 922(a)(6);

      (b)      to willfully engage in the business of dealing in firearms, and to transport and receive any firearm in interstate and foreign commerce in the course of such business without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A);

      (c)      to travel from a State and foreign country into any other State and acquire and attempt to acquire a firearm in such other State with the intent to engage in and in furtherance of dealing in firearms, and transporting and receiving a firearm in interstate and foreign commerce without a license, in violation of Title 18, United States Code, Section 924(n);

      (d)      to knowingly transport and receive in interstate and foreign commerce any firearm, which has had the manufacturer's serial number removed, obliterated, and altered, and to knowingly possess and receive any firearm which has had the manufacturer's serial number removed, obliterated, and altered and has, at any time, been shipped and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(k);

(e)     to willfully transfer, sell, trade, give, transport, and deliver a firearm to a person, who the transferor knows and has reasonable cause to believe does not reside in the State in which the transferor resides, in violation of Title 18, United States Code, Section 922(a)(5);

(f)     to fraudulently and knowingly export, send, and attempt to export and send from the United States any merchandise, article, and object, contrary to any law and regulation of the United States, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, article, and object, prior to exportation, knowing the same to be intended for exportation contrary to any law and regulation of the United States, in violation of Title 18, United States Code, Section 554; and

(g)     to willfully export a firearm, which was designated a defense article under Category I of the United States Munitions List, without a license for such export from the Department of State, in violation of the Arms Export Control Act, Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and the International Traffic in Arms Regulations, Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.3.

## PURPOSE

2.     The primary purpose of the conspiracy was to purchase firearms in the United States, smuggle the firearms to Mexico, and supply the firearms to the Cartel de Jalisco Nueva Generación, a transnational criminal organization.

## MANNER AND MEANS

3.     To achieve the purpose of the conspiracy, the conspirators found firearms using online gun brokers, purchased firearms, falsely represented themselves as the actual buyers of the firearms, acquired the firearms from licensed firearms dealers, transported the firearms to California, removed the serial numbers from firearms, smuggled the firearms from the United States to Mexico, and transferred the firearms to associates of the Cartel de Jalisco Nueva Generación.

## ACTS IN FURTHERANCE

4.     To further the conspiracy, the conspirators committed overt acts in the Eastern

District of Wisconsin and elsewhere, including but not limited to the following:

(a) In or about December 2017, JESUS CISNEROS-HERNANDEZ spoke with Co-Conspirator 1 and Co-Conspirator 2 in Jalisco, Mexico, about purchasing firearms in the United States in exchange for money.

(b) Between on or about February 13, 2018, and on or about March 5, 2018, Co-Conspirator 1 attempted to recruit a resident of California to purchase firearms for export from the United States in exchange for money.

(c) On or about February 20, 2018, Co-Conspirator 1 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006768.

(d) On or about March 11, 2018, Co-Conspirator 1 and Co-Conspirator 2 transported a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006768 from the Eastern District of Wisconsin to California for export from the United States to Mexico.

(e) On or about April 1, 2018, Co-Conspirator 2 transported money received in exchange for a firearm from Mexico to the United States.

(f) On or about April 9, 2018, Co-Conspirator 2 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 caliber rifle bearing serial number AA006824.

(g) On or about April 11, 2018, Co-Conspirator 1 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number 1535.

(h) On or about April 25, 2018, Co-Conspirator 1 took possession of a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number 1535 from The Shooters' Sports Center in Racine, Wisconsin.

(i) On or about June 13, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 caliber rifle bearing serial number AA002853.

(j) On or about June 15, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive The Gun Shop LLC, a licensed dealer in

Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Browning M2HB .50 BMG caliber rifle bearing serial number 000043.

(k)     On or about July 10, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive The Shooters' Sports Center, a licensed dealer in Racine, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model M82A1 .50 caliber rifle bearing serial number AA002148.

(l)     On or about September 13, 2018, Co-Conspirator 1 and CRISTINA COLE communicated about an attempt to purchase a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number AA007538 from Fletcher Arms, a licensed dealer in Waukesha, Wisconsin.

(m)     On or about September 18, 2018, Co-Conspirator 2 made a false statement intended and likely to deceive Fletcher Arms, a licensed dealer in Waukesha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model 82A1 .50 BMG caliber rifle bearing serial number AA007538.

(n)     On or about September 12, 2018, RAFAEL PRECIADO attempted to purchase a Barrett Model M82A1 .50 BMG caliber rifle bearing serial number AA007013 from The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin.

(o)     On or about September 12, 2018, RAFAEL PRECIADO made a false statement intended and likely to deceive The Gun Shop LLC, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model M82A1 .50 BMG caliber rifle bearing serial number AA007013.

(p)     On or about September 20, 2018, Co-Conspirator 3 made a false statement intended and likely to deceive Gander Outdoors, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a Barrett Model M82A1 .50 BMG caliber rifle bearing serial number AA007013.

(q)     Between on or about October 25, 2018, and on or about October 31, 2018, Co-Conspirator 1 disposed of multiple rifle cases and pistol cases, firearms manuals, and an inspection tag for a Barrett .50 caliber rifle bearing serial number AA007013 in a dumpster in Oak Creek, Wisconsin.

(r)     On or about February 27, 2019, Co-Conspirator 1 made a false statement intended and likely to deceive Gander Outdoors, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a FN America SCAR 17S 7.62 caliber rifle bearing serial number H0C10924.

(s)    On or about February 27, 2019, Co-Conspirator 1 made a false statement intended and likely to deceive Gander Outdoors, a licensed dealer in Kenosha, Wisconsin, with respect to a fact material to the lawfulness of the sale and disposition of a FN America SCAR 17S 7.62 FDE caliber rifle bearing serial number HC40015.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOURTEEN
### *Smuggling Goods from the United States*

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Between on or about July 10, 2018, and on or about July 29, 2018, in the State and

Eastern District of Wisconsin and elsewhere,

**JESUS CISNEROS-HERNANDEZ,
JUAN ARTURO CHARLES,
VICTOR COBIAN, and
DEJAN ZORIC**

did knowingly export and send from the United States and attempt to export and send from the

United States objects, and did receive, conceal, buy, sell, and facilitate the transportation,

concealment, and sale of such objects, knowing the same to be intended for exportation, contrary

to a law and regulation of the United States, namely, the Gun Control Act of 1968, specifically,

Title 18, United States Code, Section 922(a)(1)(A), the Arms Export Control Act (AECA),

specifically, Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and the International

Traffic in Arms Regulations (ITAR), specifically, Title 22, Code of Federal Regulations, Sections

121.1, 123.1, 127.1, and 127.3.

2.      One of the objects is more particularly described as a Barrett Model M82A1 .50

BMG caliber rifle bearing serial number AA002148.

All in violation of Title 18, United States Code, Sections 554, 2(a), and 2(b), and *Pinkerton*

*v. United States*, 328 U.S. 640 (1946).

## COUNT FIFTEEN
### *Violation of the Arms Export Control Act*

**THE GRAND JURY FURTHER CHARGES THAT:**

Between on or about July 27, 2018, and on or about July 29, 2018, in the State and Eastern

District of Wisconsin and elsewhere,

**JESUS CISNEROS-HERNANDEZ,
JUAN ARTURO CHARLES,
VICTOR COBIAN, and
DEJAN ZORIC**

did willfully export, attempt to export, and cause to be exported a defense article, namely, a Barrett

Model M82A1 .50 BMG caliber rifle bearing serial number AA002148, which was designated

under Category I of the United States Munitions List, from the United States to Mexico, without a

license for such export issued by the Department of State.

In violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22,

Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.3, Title 18, United States

Code, Sections 2(a) and 2(b), and *Pinkerton v. United States*, 328 U.S. 640 (1946).

# ATTACHMENT B

On May 21, 2018, members of the Cártel Jalisco Nueva Generación (CJNG), a Mexican transnational drug trafficking organization, attempted to assassinate Luis Carlos Najera Gutierrez de Velasco, the Minister of Labor of Mexico and the former Attorney General for the State of Jalisco, in Guadalajara, Mexico.

On June 9, 2018, Mexican law enforcement officers searched the Guadalajara residence of a suspected CJNG cartel member in response to this assassination attempt. During the search, agents recovered 33 firearms, 3 grenade launchers, thousands of rounds of ammunition, 243 bags of marijuana, one bag of synthetic white material, scales, and communication radios.

One of the firearms recovered was a Barrett Model 82A1 .50 caliber rifle (Serial: AA006824). The serial number had been obliterated, but was identified through firearm parts. A gun trace revealed that the firearm was purchased by Elias Cobian, a resident of Racine, Wisconsin, at The Shooters' Sports Center in Racine on April 27, 2018. This purchase occurred 24 days before the assassination attempt and 43 days before recovery.

Beginning with this firearm recovery, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and Homeland Security Investigations (HSI) exposed a complex firearm trafficking operation between Wisconsin, Nevada, California, and Mexico. The primary purpose of the conspiracy was to purchase firearms in the United States, smuggle the firearms to Mexico, and supply the firearms to the Cartel de Jalisco Nueva Generación (CJNG), a transnational criminal organization.

In December 2017, Conspirator 1 and Conspirator 2 met Jesus Cisneros-Hernandez, a.k.a. "Chindu," at the Juan Palos Bar in Tonaya-Cofradia, Jalisco, Mexico—a small town controlled by CJNG. While there, Cisneros-Hernandez inquired if Conspirator 1 and Conspirator 2 would be interested in making money by purchasing firearms in the United States. Conspirator 1 and Conspirator 2 agreed to do so. Cisneros-Hernandez detailed the scheme, saying that he would provide details on the types of firearms after they returned to the United States, and asked Conspirator 1 to find others to purchase firearms. Cisneros-Hernandez told Conspirator 1 that he had "permission" to sell firearms in that area. Cisneros-Hernandez offered to pay about double the cost of the firearm.

About two weeks later, Conspirator 1 and Cisneros-Hernandez met in person, and Cisneros-Hernandez offered to pay $18,000 in United States currency for a .50 caliber firearm. Cisneros-Hernandez told Conspirator 1 to remove the serial numbers from the firearms and drop them off in California. During this meeting, Cisneros-Hernandez provided Conspirator 1 $9,000 in United States currency, the approximate cost of a Barrett .50 caliber rifle, before Conspirator 1 left Mexico for the United States.

Conspirator 1 first purchased a firearm for this scheme in February 2018 from The Shooters' Sports Center in Racine, Wisconsin. Conspirator 1 completed the certification on the ATF Form 4473 on which Conspirator 1 stated that he was the "actual transferee/buyer of the firearm(s)," when, in fact, he was not. After purchasing this firearm, Conspirator 1 and Conspirator 2 transported the firearm to California in March 2018, where Conspirator 1 removed the serial

number from the firearm, before providing the firearm to a courier. During the relevant time period, the rifle was a "defense article" subject to the Arms Export Control Act and International Traffic in Arms Regulations's licensing requirement, according to the United States Department of State's Directorate of Defense Trade Controls. Conspirator 1 and Conspirator 2 later received $9,000 in U.S. currency in Mexico for this firearm.

Conspirator 1 and Conspirator 2 purchased and transported other firearms for this trafficking operation. Conspirator 1, Conspirator 2, and Conspirator 3 later decided to cooperate and implicated Victor Cobian in the trafficking operation. Around May 2018, Victor Cobian showed Conspirator 2 two rifles, and Conspirator 1 and Conspirator 2 told Victor Cobian that Cisneros-Hernandez would pay double the price for the two rifles. Conspirator 1 relayed the types of firearms that Cisneros-Hernandez was interested in, and Victor Cobian purchased firearms from a third party in a private party transaction before coordinating directly with Cisneros-Hernandez about firearms purchases.

In May 2018, Victor Cobian and Conspirator 2 flew from Chicago O'Hare to Las Vegas after checking in four large gun cases, and they then drove the four large gun cases, along with other items, from Las Vegas to California, where Victor Cobian provided the firearms to Cisneros-Hernandez's smuggler Richard Mosqueda.

In May 2018, Conspirator 3 joined the firearms trafficking conspiracy, and purchased three Barrett .50 caliber rifles and a Browning M2HB .50 caliber rifle between June 2018 and September 2018 for the scheme.

In June 2018, Conspirator 3 purchased a Browning M2HB .50 caliber rifle (Serial: 000043) from The Gun Shop in Kenosha, Wisconsin. The Browning M2HB (Serial: 000043) was so large that Conspirator 3 could not fit this in his car, so he returned with his truck. Conspirator 3 then brought this firearm to his house, and Victor Cobian, Conspirator 1, and Conspirator 2 assisted with offloading this firearm.

On July 26, 2018, Conspirator 3 purchased a Barrett Model M82A1 .50 caliber BMG rifle (Serial: AA002148) from The Shooters' Sports Center in Racine, Wisconsin. Conspirator 3 completed the ATF Form 4473 for this firearm on July 10, 2018, which certified that he was the "actual transferee/buyer of the firearm(s)," when, in fact, he was not. Conspirator 1 fronted the money for this firearm, and Conspirator 3 took this firearm to Conspirator 1's house and gave Conspirator 1 the firearm. Conspirator 1 traveled to Las Vegas on July 27, 2018, and he took the Barrett Model M82A1 .50 caliber BMG rifle (Serial: AA002148) with him. After arriving in Las Vegas, Conspirator 1 rented a car, and was contacted by Victor Cobian who told Conspirator 1 to pick up additional firearms from Dejan Zoric, who lived in Las Vegas. When Conspirator 1 arrived at Zoric's home, he pulled into Zoric's garage, loaded gun boxes into his rental car, and left. Telephone toll records confirm that Victor Cobian, Dejan Zoric, and Conspirator 1 were all communicating regularly in the days before and during this trip, and Victor Cobian paid for Conspirator 1's hotel room.

Conspirator 1 then transported all of the firearms from Las Vegas to California and transferred the firearms to Conspirator 4. Conspirator 4 provided all the firearms to Richard Mosqueda for smuggling into Mexico. Homeland Security's records show that Mosqueda crossed

into the United States on July 26, 2018, July 27, 2018, and July 30, 2018, at the Otay Mesa Port of Entry. Victor Cobian informed Conspirator 1 that he would pay Zoric from his share of the proceeds. Conspirator 1 also received his share of the proceeds from Victor Cobian.

During the relevant time period, a Barrett Model 82AI .50 caliber rifle was a "defense article" subject to ITAR's licensing requirement, according to the U.S. Department of State's Directorate of Defense Trade Controls.

On October 9, 2018, Victor Cobian purchased two Barrett rifles—Barrett 82A1 .50 caliber (Serial: Barrett AA007837) and Barrett 82A1 .50 caliber (Serial: AA007825). Victor also purchased a Fabrique Nationale Herstal M249S 5.56 caliber rifle (Serial: M249SA05209) from Chambered, a federal firearms licensee in Sturtevant, Wisconsin.

On October 25, 2018, ATF agents went to Chambered and requested the ATF Form 4473 for one of Victor Cobian's firearm purchases. They learned that Victor Cobian had recently purchased the three rifles discussed directly above. The gun shop owner reported that Victor Cobian preferred only to deal with an employee named J.C.

ATF discovered text messages, which show that J.C. kept Victor Cobian apprised of the ATF's investigation relating to the federal firearms licensee. J.C. also told agents that he knew the ATF was investigating Victor Cobian because ATF had requested transaction records for Victor Cobian's firearm purchases.

After receiving the information about the investigation from J.C., Victor Cobian called Conspirator 1 and told him that his "buddy" informed him that they were being investigated. Victor Cobian came to Conspirator 1's house and told Conspirator 1 to get rid of all of the gun cases, manuals, and receipts, and told him that they should not talk on the phone after that. Conspirator 1 discarded multiple gun cases and manuals in a dumpster near Victor's Again, an Oak Creek tavern owned by the Cobian family.

On October 31, 2018, six days after the interview at Chambered, an Oak Creek police officer found five Barrett rifle cases, three KelTec PMR30 pistol cases, and one Plano long gun case in a dumpster approximately 0.3 miles from Victor's Again. These matched the gun cases purchased by co-conspirators, with certain cases having matching serial numbers with firearms purchased by co-conspirators.

On March 1, 2019, agents executed search warrants for five residences and two vehicles in Wisconsin. In total, agents recovered 52 firearms and 29 electronic devices. One of the 29 firearms recovered from Victor Cobian's residence was a pistol with a custom grip inscribed with "CJNG." None of the high-powered, large-caliber firearms except for the two Fabrique Nationale Herstal SCAR 17 SFDE 7.62 rifles, purchased days earlier by Conspirator 1 were recovered.

At Victor Cobian's house, agents found multiple firearms, a Barrett Pelican gun case with a manual, a FN Herstal 9C, a FNP .45 caliber, a passport, three boxes of empty belt feeds for .50 caliber rounds, two empty Barrett rifle cases, a drop-in auto sear, two bags of shredded documents, an empty KelTec rifle box, and 25 cartridges of .50 caliber ammunition.

# ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney, and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 8/25/24

_____
VICTOR COBIÁN
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 8/25/24

_____
MICHAEL STEINLE
Attorney for Defendant

For the United States of America:

Date: 8/26/24

_____
GREGORY J. HAANSTAD
United States Attorney

Date: 08/26/2024

_____
CHRISTOPHER LADWIG
PHILIP T. KOVOOR
Assistant United States Attorneys

24